IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

RALPH H. JURJENS, III,

                    Plaintiff,

        v.                                                OPINION and ORDER

JOSEPH NIESL, CYNTHIA KLEINSCHMIDT,                        20-cv-317-jdp
DEAN WOLLSCHLAGER, ELIZABETH RIEDEL,
LAURA GORDON, RICHARD JOHNSON,
and MARGARET KIECA,

                    Defendants.

Plaintiff Ralph H. Jurjens, III, appearing pro se, is currently incarcerated at New Lisbon Correctional Institution. Jurjens alleges that when he was at Columbia Correctional Institution, staff made him work in a kitchen with a slippery floor that caused him to slip, fall, and suffer injuries; that they failed to honor a "no-work" restriction that had been entered afterward to prevent him from suffering severe pain while working; and that they failed to provide him with proper medical care.

There are two sets of defendants in this case: a group of defendants represented by the attorney general's office who I will refer to as the "state defendants," and defendant Nurse Margaret Kieca, who is proceeding separately from this group. Both sets of defendants move for summary judgment. Dkt. 56 and Dkt. 93. Although the parties' evidence shows that defendants failed to notice that Jurjens had a no-work restriction, there is no evidence suggesting that they consciously ignored the restriction or otherwise disregarded his medical problems. I will grant defendants' motions as they relate to Jurjens's Eighth Amendment claims, and I will relinquish the court's supplemental jurisdiction over Jurjens's state-law negligence claims.

UNDISPUTED FACTS

The following facts are drawn from the parties' proposed findings of fact and supporting evidence, and they are undisputed unless otherwise noted. The state defendants object to several of Jurjens's proposed findings of fact for failing to include citations to admissible evidence, but many of these proposed findings simply repeat what Jurjens says in his declaration, which is admissible evidence. I will accept Jurjens's firsthand account of events as stated in his declaration even though some of his proposed findings do not include citations to the corresponding part of the declaration.

## A. Parties

During the events in question in this lawsuit, plaintiff Ralph H. Jurjens, III was housed at Columbia Correctional Institution (CCI). Defendants all worked at CCI. Joseph Niesl was the food service manager. Cynthia Kleinschmidt was a food service administrator. Richard Johnson, Elizabeth Riedel, Laura Gordon, and Dean Wollschlager were "food service leaders." Johnson worked on the main kitchen floor, Riedel worked in the culinary area, Gordon worked in the bakery, and Wollschlager worked with the prisoner dishwashers. Defendant Margaret Kieca was a registered nurse working at the prison.

## B. Jurjens's accidents

Jurjens worked in the main kitchen at CCI as a dishwasher. This case concerns two incidents in which Jurjens slipped and fell while working in the kitchen. Jurjens says that the kitchen floor was constantly wet because of the lack of air conditioning in the kitchen and heat and steam created by the ovens and sanitizer. The state defendants explain that measures had already been taken to increase safety in the area: there were rubber slip-resistant mats by the sinks and drying sections of the dishwashing area, and there were fans blowing on the floor in

2

the dishwashing area to help keep it dry. Jurjens says that there were areas where mats could have been added to reduce the possibility of slip-and-fall accidents.

On September 5, 2016, Jurjens slipped in the dishwashing area while walking off one of the rubber mats. He says that he twisted his ankle. In his deposition, Jurjens noted that it was "nothing like serious." Dkt. 55, at 43. Jurjens reported the incident to defendant Wollschlager. Jurjens says that Wollschlager told the officer on duty that Jurjens needed an escort to be evaluated at the Health Services Unit (HSU). In an associated incident report, the officer on duty says it was a different, non-defendant, supervisor who told him to contact the HSU. Jurjens was excused from work for the rest of the day; prison officials call this a "restriction."

A few days after this incident, he spoke to defendant Johnson, who was supervising the dishwashing area because Wollschlager was not at work. Jurjens told Johnson how he had slipped and twisted his ankle and how he thought that measures should be taken to make the dishwashing floor safer. Johnson put his hands up in what Jurjens thought was a "surrender" gesture and said, "That's above my pay grade." Johnson instructed Jurjens to talk to Niesl. Jurjens spoke to Niesl about how slippery and dangerous Jurjens thought the dishwashing floor was. Niesl said that he would look into it, but no changes were made.

On September 23, 2016, Jurjens slipped and fell on the wet floor while carrying a stack of muffin pans. The state defendants say that inmate workers were supposed to use carts to transport dishes, pots, and pans using carts. Jurjens says that carts were rarely available for this purpose, so inmates had to carry them.[1]

---

[1] In his proposed findings of fact, Jurjens contends that prison officials failed to preserve video footage of his September 23, 2016 accident. But he did not file a formal motion to compel discovery of this footage, and in any event at summary judgment I must credit his version of

Non-defendant correctional officer Nitz filled out two forms: an accident report and an incident report. In his accident report, Nitz states that he informed defendant Niesl that "another" inmate fell in the dish area because of the wet floor and that something should be done to prevent accidents in the future. Dkt. 60-1, at 1. Niesl contacted the maintenance department. The state defendants say that new non-slip mats and floor spray were installed about a week after that accident; Jurjens agrees that non-slip spray was applied to the floors but he says that no new floor mats were added.

## C.  Jurjens's employment after the accidents

A few days after Jurjens's second accident, he was issued a no-work restriction because of his injuries. But the unidentified staff member who issued the restriction did not notify Jurjens, and there is no evidence that any of the defendants were notified either.

From late September to late October 2016, Jurjens complained "daily" to his dishwasher supervisor defendant Wollschlager and fill-in supervisor defendant Johnson that his back was in "excruciating" pain and that the heavy lifting and bending associated with the job exacerbated that pain. Defendants did not believe Jurjens, with Wollschlager calling him lazy. They told Jurjens to contact the HSU if he had a medical problem, even after Jurjens stated that the HSU was not helping him.

In their role as food service leaders, Wollschlager and Johnson did not have access to the medical-restriction portion of the prison's Wisconsin Integrated Corrections System (WICS) database, so they were unaware that Jurjens had already been issued a no-work restriction. They would usually learn about an inmate's no-work restriction from that inmate's

_____

events.

unit staff. Wollschlager continued to schedule Jurjens to work as a dishwasher. Jurjens says that Johnson also scheduled him for work when he filled in for Wollschlager. Johnson denies this. Each food service leader was responsible for inmate workers in their assigned kitchen area. The other food service leaders, including defendants Riedel and Gordon, were not involved in scheduling Jurjens.

In late October, defendant food service administrator Kleinschmidt sent a unit manger an email noting that Jurjens would be fired from his job because he had taken "lay-in" status three days in a row and that he refused to go to the HSU to determine why he could not work. Jurjens states that he had contacted the HSU. Jurjens was later reinstated to his job after it was discovered that he had been issued a no-work restriction.

**D. Medical care following second accident**

Immediately after his September 23, 2016 accident, Jurjens was escorted to the HSU and evaluated by defendant Nurse Kieca. Kieca noted that Jurjens had already been prescribed an ice pack and pain medication (at this point Jurjens was receiving Tylenol and ibuprofen). Kieca noted full range of motion in Jurjens's wrist; he disputes that he had full range of motion. She told Jurjens to keep his wrist wrapped and to rest it. She scheduled a follow up for next week and told him to contact the HSU if his condition worsened. Jurjens was given a no-work restriction of the rest of the day—it is unclear who issued it. He was unable to work the following two days because of his hand, arm, and back pain.

Two days later, Jurjens wrote to the HSU, stating that his injuries were not improving. A non-defendant nurse responded to that request. Someone in the HSU (the records don't show who) then issued Jurjens a no-work restriction until the HSU cleared him.

Jurjens saw Kieca again a week after his injury for follow up. Jurjens complained of continued tenderness in his wrist. Kieca evaluated the injury and noted Jurjens had no swelling or redness and his range of motion was normal. Jurjens states that he also complained of back pain. Jurjens told Kieca that he missed work the weekend after the injury and asked Kieca to call the kitchen to let them know that he missed work because of his injury. Kieca called defendant Niesl and left a message. Jurjens's absence was excused.

On October 2, 2016, Jurjens submitted a health service request stating that he was suffering severe back pain that shot down his right leg. Jurjens was scheduled to be seen by a nurse.

As a result, Jurjens saw Kieca two days later. Jurjens stated that his Tylenol, ibuprofen, ice, and warm compress were not effective to treat his severe pain. He asked Kieca for a work restriction. Kieca did not check to see whether Jurjens already had a work restriction, Instead, she stated, "take it up with the doctor," and she scheduled Jurjens to be seen by a doctor. Kieca did not have the authority to prescribe stronger pain medication. And in any event, she believed that he already had the proper pain medication for a soft-tissue injury. She told Jurjens to do stretches and use ice for swelling.

On October 17, 2016, Jurjens wrote a health service request stating that he suffered severe pain when lifting heavy objects as he was required to do in his kitchen job. He again asked for a work restriction. Kieca responded to the request stating that he had a doctor appointment scheduled "this month." Around this time, Jurjens stopped working at his dishwasher job because of the pain. Shortly thereafter, Jurjens submitted another health service request, and a non-defendant nurse finally informed Jurjens that he had been given a no-work restriction a few days after his second accident.

On October 28, Jurjens was seen by a doctor, who prescribed him a muscle relaxant, physical therapy, information about back stretches, and an additional 30-day no-work restriction.

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

Jurjens is proceeding on the following claims:

- Wisconsin-law negligence claims against defendants Johnson and Niesl for failing to address the slippery kitchen floor.

- Eighth Amendment and Wisconsin-law negligence claims against defendants Johnson, Niesl, Wollschlager, Riedel, Kleinschmidt, and Gordon for scheduling him to work despite his no-work restriction.

- Eighth Amendment and Wisconsin-law medical malpractice claims against defendant Kieca for her medical treatment decisions.

I will address Jurjens's Eighth Amendment claims first.

## A. Eighth Amendment

### 1. Being scheduled for work despite a no-work restriction

Jurjens contends that defendants Johnson, Niesl, Wollschlager, Riedel, Kleinschmidt, and Gordon violated his Eighth Amendment rights by continuing to schedule him for work despite him being placed on a no-work restriction after his second accident.

Prison officials violate the Eighth Amendment by knowingly disregarding a substantial risk of serious harm to the prisoner. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). I will assume for purposes of this opinion that ignoring a no-work restriction from a medical provider would violate the Eighth Amendment. But not all of the defendants that Jurjens names for this claim

were actually involved in scheduling him, and those who did schedule him were unaware of his no-work restriction.

It is undisputed that defendant food service leaders Riedel and Gordon were not responsible for scheduling Jurjens during the time at issue, nor did they even have a conversation with Jurjens about his fall or his need for a work restriction. Defendant food service administrator Kleinschmidt didn't schedule Jurjens either: she was involved only in firing Jurjens from his kitchen job in late October, after he stopped working, but I did not allow Jurjens to proceed on a claim about his termination. I will grant the state defendants' motion for summary judgment on Jurjens's Eighth Amendment claims against those defendants.

The two remaining food service leaders are defendants Wollschlager and Johnson. Wollschlager scheduled inmate dishwashers, including Jurjens. Johnson states that he did not schedule dishwashers. But Jurjens states that when Wollschlager was off work during this period, Johnson was his supervisor in the dishwashing area, so a reasonable jury could infer that Johnson scheduled dishwashers when Wollschlager was off. Nonetheless, neither Wollschlager nor Johnson had access to the medical-restriction part of WICS so they couldn't see the restriction for themselves, and there is no evidence that they were otherwise aware of Jurjens's no-work restriction when they scheduled him to work. Jurjens suggests that when he complained to them about how much it hurt for him to work, they could have asked Niesl or other staff to see if he had a no-work restriction. That might show that defendants were negligent in failing to inquire further about a possible restriction, but no reasonable jury could conclude that they consciously ignored the no-work restriction.

At summary judgment, I take Jurgens to be arguing something slightly different: that Wollschlager and Johnson violated the Eighth Amendment by continuing to schedule him to

work despite his repeated complaints of how the work caused him pain. That's not the theory under which I allowed him to proceed. But even if he were proceeding on this type of claim, he could not succeed. Jurjens states that both Wollschlager and Johnson told him to contact the HSU if he was having problems bending or lifting, which was an appropriate course of action. Medical staff's no-work restrictions are the DOC's mechanism for excusing inmates from jobs for medical reasons, and Wollschlager and Johnson had not heard through the usual channels that Jurjens indeed had a restriction. Defendants were entitled to direct Jurjens to use that system to resolve his complaints of injury. *See, e.g., Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). That they were ultimately mistaken about whether Jurjens already had a restriction might support a negligence claim but it does not support an Eighth Amendment claim based on conscious disregard of a substantial risk of harm. So I will grant the state defendants' motion for summary judgment on Jurjens's Eighth Amendment claims against Wollschlager and Johnson.

Unlike the defendant food service leaders, defendant food service manager Niesl did have access to the medical-restriction portion of WICS, which would have shown Jurjens's restriction. But Niesl wasn't directly responsible for scheduling inmate workers and there is no evidence that Jurjens or any employee asked him about a restriction. He also explains that supervisors didn't directly look at WICS to discover work restrictions; they were usually brought to the supervisors' attention by the HSU, food service leaders, or officers assigned to an inmate's unit. There is no evidence that Niesl was aware of the restriction, so the state defendants are entitled to summary judgment on the Eighth Amendment claim against Niesl.[2]

---

[2] The state defendants also contend that they are entitled to qualified immunity on Jurjens's Eighth Amendment claims against them. Because I am dismissing Jurjens's claims on the

### 2.  Inadequate medical care

I allowed Jurjens leave to proceed on an Eighth Amendment claim against Kieca for persisting in ineffective treatment for his injuries from his second accident.

The Eighth Amendment prohibits prison officials from consciously disregarding prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). A defendant "consciously disregards" an inmate's need when the defendant knows of and disregards "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

In her summary judgment briefing Kieca has chosen not to contest whether Jurjens had a serious medical need, so for purposes of this opinion I will assume that he did. Instead, she contends that she provided him with proper medical care under the circumstances.

---

merits, I need not consider the state's qualified immunity argument.

When Jurjens saw Kieca minutes after his second accident, she continued to treat him with his ice pack and medication that he had apparently been prescribed after his first accident, she gave him a no-work restriction for the day, and told him to notify HSU staff if his condition worsened. Nothing about that interaction indicates conscious disregard. Jurjens's claims center on subsequent decisions by Kieca. In particular, Jurjens contends that Kieca violated his Eighth Amendment rights by failing to get him stronger pain medication after the ibuprofen and Tylenol he was prescribed didn't working well enough. A prison medical provider can violate the Eighth Amendment despite providing some care if the provider "persists in a course of treatment known to be ineffective" or a provider's decision is "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Petties v. Carter*, 836 F.3d 722, 729–30 (7th Cir. 2016). But in considering these issues I must consider the totality of care that Jurjens received, not just pick apart individual decisions. *Id.* at 728. The Eighth Amendment does not give prisoners the right to demand specific treatment nor does it guarantee successful treatment.

Given the totality of care that Kieca provided Jurjens, no reasonable jury could conclude that she acted with conscious disregard to Jurjens's pain. In the few weeks following their initial meeting, Kieca saw Jurjens twice and responded to one of his health service requests. At his request she notified the kitchen that he missed work the weekend after his accident because of his injury, leading to his absence being excused; she evaluated him; told him to continue with his pain medication and ice; suggested stretches; and scheduled an appointment with a doctor when he continued to complain of severe pain. Those treatment decisions do not suggest

conscious disregard, but rather that nurses are limited in the treatments that they can provide—Kieca didn't have the authority to prescribe anything stronger than Tylenol or ibuprofen.

Jurjens argues that rather than scheduling a doctor appointment, Kieca should have instead immediately contacted a doctor to prescribe him stronger medication. But even after Jurjens saw a doctor he wasn't prescribed stronger pain medication; rather only a muscle relaxant and a referral to physical therapy, which supports Kieca's reasoning that soft-tissue bruising like Jurjens's is appropriately treated with over-the-counter medication. Medical judgments like these typically are not grounds for an Eighth Amendment claim, *Norwood v. Gosh*, 723 F. App'x 357, 365 (7th Cir. 2018) ("treating pain allows considerable room for professional judgment"); *Snipes*, 95 F.3d at 592 ("To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd."). The fact that Kieca failed to completely alleviate Jurjens's pain might be a question of medical malpractice, or it might reflect the unfortunate reality that not all pain can be eliminated after an injury like Jurjens's. But Jurjens fails to provide evidence that could lead a reasonable jury to conclude that Kieca consciously disregarded his problems.

Jurjens also argues that Kieca's failure to check the WICS system harmed him because she could have told him that he was already under a no-work restriction and thus could have kept him from exacerbating his pain by working. Kieca's failure to discover the restriction might have been negligence, but it isn't the basis for an Eighth Amendment claim, which is the reason that I did not allow him to proceed on such a claim in my order screening his complaint. Dkt. 13, at 6. I will grant summary judgment to defendant Kieca on Jurjens's Eighth Amendment claim against her.

**B.  Negligence**

Jurjens also brings Wisconsin-law negligence claims against each of the defendants, for disregarding the slippery kitchen floors, failing to check the WICS system for his no-work restriction, and for failing to properly treat his medical problems.

But a federal court generally does not have jurisdiction over state-law claims unless they are related to a federal claim that is pending in the same case, 28 U.S.C. § 1367, or the plaintiff and defendants are citizens of different states and the amount in controversy is greater than $75,000, 28 U.S.C. § 1332. The court cannot exercise its diversity jurisdiction because Jurjens alleges that he is a Wisconsin citizen and there is no reason to think that each defendant is a citizen of another state.

Ordinarily, this court will decline to exercise supplemental jurisdiction over state-law claims after it dismisses all federal causes of action. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). I may still outright dismiss state-law claims if they clearly have no merit and it would be inefficient to leave the claims open the state courts. *See Korzen v. Local Union 705*, 75 F.3d 285, 288–89 (7th Cir. 1996). But I am not convinced that Jurjens's negligence claims are meritless. Although the summary judgment record shows that defendants did not consciously disregard his medical problems, it is possible that he was harmed because of defendants' negligence in ensuring safe conditions in the kitchen and by failing to notice the no-work restriction that he received after his second accident. The state defendants' notice-of-claim defense is not obviously meritorious given Jurjens's estoppel argument in response, and I have previously concluded that the notice-of-claim requirement does not apply to medical

negligence claims. *See, e.g.*, *Schneider v. Kostohryz*, No. 19-cv-756-jdp, 2021 WL 2806225, at *11 (W.D. Wis. July 6, 2021); *Taylor v. Syed*, No. 19-cv-299-jdp, 2020 WL 1939011, at *1 (W.D. Wis. Apr. 22, 2020). So I will decline to exercise jurisdiction over Jurjens's state-law negligence claims.

Jurjens may refile those claims in state court, subject to the applicable Wisconsin statutes of limitations. Those limitations periods have been tolled while this case has been pending. *See* 28 U.S.C. § 1367(d) ("[t]he period of limitations for any claim asserted under [the court's supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").

ORDER

IT IS ORDERED that:

1. Defendants' motions for summary judgment, Dkt. 56 and Dkt. 93, are GRANTED with respect to plaintiff's Eighth Amendment claims.

2. Plaintiff's state-law claims are DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3).

3. The clerk of court is directed to enter judgment accordingly and close this case.

Entered August 2, 2023.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge

14